# EXHIBIT "1"

**FORM 1.997.   CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

### I.    CASE STYLE

IN THE CIRCUIT COURT OF THE <u>SEVENTEENTH</u>   JUDICIAL CIRCUIT,
IN AND FOR <u>BROWARD</u>   COUNTY, FLORIDA

<u>CareStaff Partners LLC</u>
Plaintiff

Case # _____
Judge _____

vs.

<u>Ryan Banker, Focus Staff LLC</u>
Defendant

### II.    AMOUNT OF CLAIM

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐  $8,000 or less
☐ $8,001 - $30,000
☐ $30,001- $50,000
☐ $50,001- $75,000
☐ $75,001 - $100,000
☒ over $100,000.00

### III.    TYPE OF CASE     (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

*** FILED: BROWARD COUNTY, FL  BRENDA D. FORMAN,  CLERK 06/18/2021 11:26:13 AM.****

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT, IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.:

CARESTAFF PARTNERS, LLC, a Delaware
limited liability company,

     Plaintiff,

v.

FOCUS STAFF, LLC, a Texas limited liability
company & RYAN BANKER, individually,

     Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff, CARESTAFF PARTNERS, LCC, ("Plaintiff" or "CareStaff"),
hereby files this Complaint against Defendants, FOCUS STAFF, LLC, a Texas limited liability
company (the "Company" or "Focus Staff") and RYAN BANKER ("Banker") (collectively the
"Defendants") , and avers:

## PARTIES, JURISDICTION AND VENUE

1.     CareStaff is a limited liability company organized and existing under the laws of
the State of Delaware, authorized to do business in and whose principal place of business is in
Broward County, Florida.

2.     Focus Staff is a limited liability company organized and existing under the laws of
the State of Texas, whose principal place of business is in Texas, and who is authorized to do
business in and is doing business in Florida.

3.     Banker is, and at all material times hereto was, an individual over the age of
eighteen (18) residing in Georgia.

4.     Jurisdiction is proper before this Court because Defendants breached the Contract in Florida, failed to perform acts required by the Contract to be performed in Florida, committed tortious acts within Florida, and caused damages to Plaintiff within Florida.

5.     Venue is proper before this Court because Broward County is where the causes of action accrued, and based upon the forum selection clause that is part of the Agreement between the parties that is the subject of this action.

6.     CareStaff seeks injunctive relief and civil money damages in excess of $30,000.00 exclusive of interest, costs, and attorneys' fees, for which this Court has jurisdiction.

7.     All conditions precedent to the filing of this action have occurred, been waived, or been otherwise performed.

8.     Plaintiff has retained the law offices of the undersigned attorney to represent it in this action and is obligated to pay reasonable attorneys' fees and costs.

## STATEMENT OF FACTS

9.     CareStaff is a healthcare staffing company, specializing in the temporary and permanent placement of nurses in various medical facilities including long term care facilities, skilled nursing facilities, hospitals, outpatient hospitals, and long-term acute care facilities throughout the United States.

10.     As an integral part of its business operations, CareStaff researches, identifies and compiles information about facilities that have a need for healthcare personnel ("Clients"), and researches, identifies and compiles information on qualified candidates for those positions for submission to those facilities ("Candidates").

11.     CareStaff maintains information on Clients and Candidates in its proprietary and confidential database.



12.     CareStaff employs Client Relations Managers, who research and identify open positions for nurses, cultivate and manage relationships with CareStaff's Clients and prospective Clients, and negotiate the terms of placement with CareStaff's Clients. These Client Relations Managers also identify, cultivate and manage relationships with CareStaff's Candidates who may be able to fill Client's open positions.

13.     CareStaff's Client Relations Managers use CareStaff's confidential and proprietary database to develop and maintain a network of relationships with Clients and Candidates.

14.     A high level of trust and confidence between CareStaff's Client Relations Managers, and its Clients and Candidates, is key to building business in the staffing industry and making placements.

15.     CareStaff expends substantial resources in analyzing and compiling the information about its Clients, prospective Clients, and Candidates, which is not generally known to the public or readily ascertainable by proper means, and from which CareStaff derives independent economic value.

16.     CareStaff hired Banker in October 2020 as a Client Relations Managers responsible for identifying, hiring, prospecting, and maintaining regular contact with Candidates and prospective Candidates for placement opportunities with Clients and prospective Clients, and for managing CareStaff's relationships with Clients and Candidates.

17.     As a condition of his employment, Banker entered into an Employment Agreement with CareStaff, including restrictive covenants, effective October 5, 2020 (the "Agreement"). A copy of Banker's Employment Agreement with CareStaff is incorporated herein and attached hereto as Exhibit "A".

18.     Banker voluntarily resigned from his position with CareStaff on March 31, 2021.



19.    In the course of Banker's employment with CareStaff, CareStaff provided him with access to confidential information needed for the performance of his job duties, including but not limited to CareStaff's business plans and practices, marketing plans and practices, marketing databases, statistical data, Candidate and applicant lists and information, Client and prospective Client lists, job orders, Client preferences, Client contacts, contracts, CareStaff's system for recruiting and supplying Clients' needs, "on assignment" lists, pricing, and discount plans and practices ("Confidential Information").

20.    CareStaff takes reasonable measures to protect its Confidential Information by requiring employees to sign Employee Agreements including confidentiality and non-disclosure provisions, disseminating confidentiality policies, and requiring password protected access.

21.    Paragraph 12 of the Agreement signed by Banker provided that he was barred from competing against CareStaff for a period of twelve (12) months following the expiration of his employment with CareStaff for any reason.

22.    Paragraph 11 of the Agreement prohibits Banker from soliciting or otherwise having any business contact with CareStaff's Cients and Candidates for a period of twelve (12) months following the expiration of his employment with CareStaff.

23.    Paragraphs 9 and 10 of the Agreement provides that Banker cannot use or otherwise disclose to any third party CareStaff's trade secrets, or valuable confidential or professional business information, including, but not limited to, customer and vendor lists, client or vendor databases, and pricing lists.

24.    Banker specifically acknowledged that the restrictions contained in the Agreement are necessary and reasonable for the protection of CareStaff's Confidential Information, and that

CareStaff would be entitled to the entry of a temporary, preliminary, and/or permanent injunction to restrain any violations thereof, in addition to all other legal and equitable rights and remedies.

25.     Despite Banker's promise that he would not engage in competition with CareStaff for a period of twelve (12) months following the expiration of his employment with CareStaff, Banker began his employment with Focus Staff, a competing staffing company, within one (1) month after the expiration of his employment with CareStaff.

26.     As an employee of Focus Staff, Banker is now working in competition with CareStaff, in violation of the Agreement.

27.     Banker had access to CareStaff's Confidential Information and is using the Confidential Information to participate in a competing business at Focus Staff, and to solicit CareStaff's Clients and Candidates, in violation of the Agreement, and in violation of common law obligations to CareStaff.

28.     Like CareStaff, Focus Staff is a company engaged in healthcare staffing involving the placement of nurses in various medical facilities including long term care facilities, skilled nursing facilities, hospitals, outpatient hospitals, and long-term acute care facilities throughout the United States.

29.     Focus Staff has knowledge of the Agreement and covenants contained therein between Banker and CareStaff.

30.     Defendants are advertising to and soliciting CareStaff's Clients, prospective Clients and/or Candidates, using the business relationships Banker developed at CareStaff, and CareStaff's Confidential Information, to do so.

31.     Focus Staff has made and continues to make revenue from Banker's ongoing solicitation of CareStaff's Clients and Candidates and use of CareStaff's Confidential Information.



32.     By undertaking employment in which he is called on daily to compete for the same business as CareStaff, Banker has placed himself in a position where CareStaff's Confidential Information is of direct value to him in obtaining and retaining Focus Staff's business.   Such actions create a direct threat of actual and inevitable disclosure of CareStaff's Confidential Information.

## COUNT I
## BREACH OF CONTRACT
### (Against Banker)

33.     Plaintiff restates and realleges paragraphs 1 through 32 above as if fully set forth herein.

34.     The Agreement between Banker and CareStaff, including the restrictive covenants contained therein, is a valid and enforceable contract.

35.     CareStaff has performed all conditions, covenants, and promises required of it under the terms of the Agreement.

36.     The restrictive covenants in the Agreement are justified by CareStaff's legitimate business interest in protecting its Confidential Information, maintaining its substantial relationships with specific prospective and existing Clients and Candidates, and protecting its Clients' goodwill and business reputation.

37.     Each of the restraints specified in the Agreement is reasonable and necessary to protect the legitimate business interests of CareStaff.

38.     Banker's actions as above described, including his employment by Focus Staff in direct competition with CareStaff, and his solicitation of and doing business with CareStaff's Client and Candidates, constitute breaches of the Agreement.

39.     As a proximate result of Banker's breach of his contractual obligations, CareStaff has suffered, and will continue to suffer, irreparable injury to its Client and Candidate relationships, goodwill, and business reputation which cannot be measured solely in terms of monetary damages and for which CareStaff has no adequate remedy at law. Pursuant to § 542.335, Florida Statues, Banker's violations may be specifically enjoined.

40.     CareStaff is also entitled to such actual and consequential damages as can be reasonably ascertained and its attorneys' fees and costs in pursuing this action.

**COUNT II**
**MISAPPROPRIATION OF TRADE SECRETS**
**(Against All Defendants)**

41.     Plaintiff restates and realleges paragraphs 1 through 32 above as if fully set forth herein.

42.     As a result of his employment with CareStaff, Banker was given access to and utilized CareStaff's Confidential Information, including its trade secrets as defined in Florida's Uniform Trade Secrets Act, Chapter 688, Florida Statues.

43.     The information to which Banker was given access during his employment constitutes trade secret information in that the information has commercial value by virtue of the fact that is not generally known or readily ascertainable by competitors, and CareStaff made reasonable efforts to maintain the secrecy of such information.

44.     Defendants have misappropriated and/or threatened to misappropriate CareStaff's trade secrets, knowing that the trade secrets were acquired under circumstances giving rise to a duty to maintain their secrecy.

45.     Defendants' actions were willful and malicious.



46.     As a direct and proximate result of Defendants' misappropriation and/or threatened misappropriation, Plaintiff has suffered and will continue to suffer irreparable injury to its Client and Candidate relationships, goodwill, and business, which cannot be measured solely in terms of monetary damages and for which CareStaff has no adequate remedy at law.

47.     Under the Florida Uniform Trade Secrets Act, actual or threatened misappropriations may be enjoined.

**COUNT III**
**INTENTIONAL INTERFERENCE WITH CONTRACT**
**(Against Focus Staff)**

48.     Plaintiff restates and realleges paragraphs 1 through 32 above as if fully set forth herein.

49.     CareStaff had an existing contract with Banker (the Agreement).

50.     Focus Staff had knowledge of CareStaff's contract with Banker.

51.     Focus Staff intentionally and unjustifiably interfered with CareStaff's contract with Banker, by employing his and inducing his to use and disclose CareStaff's Confidential Information.

52.     As a direct and proximate result of Focus Staff's intentional interference, CareStaff has suffered and will continue to suffer damages.

53.     Further, Plaintiff has suffered and will continue to suffer irreparable injury to its Client and Candidate relationships, goodwill, and business reputation, as a result of Focus Staff's intentional interference, which cannot be measured solely in terms of monetary damages and for which CareStaff has no adequate remedy at law.



*CareStaff Partners, LLC v. Focus Staff, LLC, & Ryan Banker*
Complaint
Page 9 of 13

**COUNT IV**
**INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONSHIPS**
**(Against All Defendants)**

54.    Plaintiff re-alleges and incorporates herein paragraphs 1 through 32 above, as if fully set forth herein.

55.    CareStaff has existing business relationships with its Clients and Candidates which have been developed over time, and there is and was the probability that CareStaff would derive future economic benefit therefrom.

56.    Defendants had knowledge of CareStaff's business relationships with its Clients and Candidates.

57.    Defendants intentionally and unjustifiably interfered with, and continue to intentionally and unjustifiably interfere with, CareStaff's business relationships with its Clients and Candidates.

58.    As a direct and proximate result of Defendants' actions, CareStaff has suffered and will continue to suffer damages.

**COUNT V**
**CIVIL CONSPIRACY**
**(Against All Defendants)**

59.    Plaintiff re-alleges and incorporates herein paragraphs 1 through 32 above, as if fully set forth herein.

60.    Defendants conspired and acted in concert to achieve the object of their conspiracy through unlawful means by assisting, encouraging, and participating with one another in misappropriating confidential and proprietary information, and intentionally interfering with CareStaff's Agreement with Banker, and its business relations with its Clients and Candidates.



61.     As a direct and proximate result of Defendants' conspiracy and concerted action, CareStaff has suffered and will continue to suffer damages.

62.     As co-conspirators, each Defendant is jointly and severally liable for any and all damages incurred by CareStaff as a result of any action or omission of any co-conspirator in furtherance of the object of the conspiracy.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands the following:

a.  Judgment in its favor and against Defendants;

b.  Temporary and Permanent injunctive relief prohibiting any further wrongful possession, disclosure, and/or use of CareStaff's Confidential Information, including but not limited to any and all copies, electronically stored information, drafts, memos, or other memorialized versions of CareStaff's Confidential Information, and preventing Defendants from profiting or benefiting from their wrongful conduct;

c.  An order that Defendants return to CareStaff, and then purge from their possession, custody and control, any and all documents, computer-based files or data, or information in any form, whether originals, copies, compilations or derivations, which were removed from CareStaff or CareStaff owned computers;

d.  An order that Defendants return to CareStaff any and all Confidential Information, and prohibiting any further use or benefit from the use of said information;

e.  An order that Defendants produce any and all computer memory storage devices containing CareStaff's Confidential Information for the purposes of CareStaff inspecting such devices (such as laptop computers, personal home computers, and



personal mobile devices) and deleting such information from these computers' storage memory devices;

f. An order temporarily and permanently enjoining and restraining the Defendants from directly or indirectly, on their own behalf, or on behalf of any other person, entity or firm, undertaking or assisting in the solicitation of, selling to or doing business with any Clients or Candidates and from using CareStaff's Confidential Information;

g. Any order temporarily and permanently enjoining and restraining Banker and those persons or entities acting in concert with his (including Focus Staff) from directly or indirectly engaging in, soliciting or performing any work competitive with CareStaff in the business of nursing staffing, for a period of one (1) year beginning on the date of issuance of said injunction;

h. An order temporarily and permanently enjoining and restraining Banker from maintaining employment with Focus Staff for a one (1) year period beginning on the date of issuance of said injunction;

i. An award of general, special, consequential, and compensatory damages to CareStaff in an amount to be determined at a hearing and/or trial including, but not limited to: (1) all amounts Defendants received from contracts entered into, solicited, procured or negotiated while using, utilizing, referencing or relying on CareStaff's Confidential Information; and (2) the attorneys' fees, expert fees, and costs CareStaff has incurred to investigate Defendants' wrongful actions;

j. An order directing Defendants to disgorge all gross revenues and profits that they or anyone acting in concert or participation with them received as a result of their wrongful conduct, in an amount to be determined at trial;



k.  An accounting by Focus Staff of all profits earned as a result of Defendants' improper actions;

l.  An award of general, special, and consequential damages against Banker as may be determined to have resulted from his violation of the Agreement;

m.  An award of general, special, and consequential damages against all Defendants as may be determined to have resulted from their intentional interference with CareStaff's contracts and/or business relationships and conspiracy;

n.  An award of attorneys' fees, court costs, and expenses incurred by CareStaff as permitted under the causes of action asserted herein;

o.  An aware of pre and post-judgment interest as permitted by law; and

p.  Any such other legal and equitable relief as the Court deems appropriate.

## JURY DEMAND

63.     Plaintiff demands trial by jury on all issues so triable.

Dated: June 18, 2021                              Respectfully Submitted,

                                                  */s/ Robert C. Streit*
                                                  ROBERT C. STREIT, ESQ.
                                                  Fla. Bar No.: 70780
                                                  SKS LEGAL GROUP, P.A.
                                                  101 NE Third Avenue, Suite 1500
                                                  Fort Lauderdale, Florida 33301
                                                  Telephone: (954) 637-3713
                                                  Email: rstreit@skslegalgroup.com
                                                  *Attorneys for Plaintiff*



EXHIBIT "A"

# CareStaff
## PARTNERS

7777 Davie Rd Ext, STE 202A, Hollywood, FL 33024 |Ph: 954-900-1503 | Toll Free: 844-876-5501 | admin@carestaffpartners.com

### CARESTAFF PARTNERS LLC EMPLOYMENT AGREEMENT

**THIS EMPLOYMENT AGREEMENT** (the "Agreement") is dated and effective as of this 12th day of October 2020 (the "Effective Date"), by and between CareStaff Partners, LLC, having its principal address at 7777 Davie Road Ext., Ste 202A, Hollywood, Florida 33024 (the "Company"), and ("Employee"), Ryan J. Banker who resides at 1706 Sandalwood Drive, Atlanta, GA 30350 (collectively, "the Parties").

**WHEREAS,** Company is a successful and competitive healthcare staffing firm providing a full range of staffing services by and through its team of staffing professionals;

**WHEREAS**, Company has over the years developed confidential and proprietary business information and trade secrets, as well as developed substantial and valuable relationships with its candidates, clients, and vendors, which have earned Company a respected name in the healthcare staffing industry and has resulted in the rapid development of its overall business and customer goodwill;

**WHEREAS**, Employee is willing to perform services for Company, all in accordance with this Agreement;

**WHEREAS**, Company and Employee agree that it is appropriate to enter into this Agreement to acknowledge their understanding that Employee's employment or continued employment with Company is predicated upon Employee's agreement to enter into this Agreement and abide by the restrictive covenants contained herein;

**WHEREAS**, Company desires to employ Employee upon the terms and conditions hereinafter set forth, which shall replace any and all pre-existing employment offers and agreements with Company;

**WHEREAS**, Employee desires to be so employed upon the terms and conditions hereinafter set forth;

**NOW, THEREFORE**, in consideration of the promises and other good and valuable consideration as set forth herein, the Parties agree as follows:

1.   **Recitations.** The foregoing recitations and representations comprise a part of this Agreement.

2.   **Relationship, Duties and Responsibilities**. Subject to the conditions set forth herein, the Company agrees to employ Employee and Employee agrees to accept employment with the Company for the term of employment hereinafter defined. During the term of employment, Employee, subject to the provisions of this Agreement, shall: (a) be a full-time employee of the Company with the title of Remote Client Relations Manager; (b) provide work directly related to the management and/or general operation of the business; (c) exercise discretion and independent judgment with respect to matters of significance involving clients, candidates, and temporary employee relations; (d) prepare and attend to, in connection with the services rendered pursuant hereto, all reports, claims, and correspondence necessary or appropriate under the circumstances; and (e) be responsible achieving maximum profitability and growth by effectively managing clients, temporary employees, and offering the Company's services. Employee agrees to observe and comply with the policies and procedures of the Company, as adopted by Company, either orally or in writing, and to carry out and to perform orders, directions, and polices stated by Company to employee from time to time, either orally or in writing. Employee shall perform the duties set forth herein with such standards of professional ethics, competence, and practices as may from time to time be applicable to the staffing industry, and to abide by all necessary local, state, and federal laws during the term of this Agreement. Employee acknowledges s/he is exempt from the overtime provisions




of the Fair Labor Standards Act ("FLSA") and therefore not entitled to overtime pay because the Employee's primary duties are office work directly related to the management and/or general business operations and allow Employee to exercise discretion and independent judgment with respect to matters of significance.

As a Remote Employee, Employee's principal place of business will be from a non-Company location. The remote working arrangement between Employee and Company is subject to change at the Company's sole discretion.

**3.      Dedication of Time**. During the Term of Employment, as defined herein, Employee shall devote all of his/her business time and attention, and give his/her best efforts and skill to furthering the business and interests of Company and to the performance of any other duties attendant to his/her employment, consistent with the terms of this Agreement.  Employee shall work for Company at such times and on such days as the operations of Company may require, as determined by Company at its discretion.  Employee is not required to work on the following paid holidays: New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, day after Thanksgiving, and Christmas Day, unless otherwise instructed by the Employer, or as required by his/her job duties.

**4.      Conflicting Activities.** While employed by Company, Employee shall not engage in any activity that competes, conflicts, or interferes with Company's business or with the performance of Employee's duties hereunder. Employee further agrees that, while employed by Company, Employee shall not have any direct or indirect ownership or financial interest in any business entity that is engaged, in whole or in part, in a competing business with the Company.

**5.      Term**. This Agreement shall commence on the Effective Date for one (1) year ("Initial Term"). Following the Initial Term, Employee's employment shall continue under the same terms of this Agreement, unless otherwise amended in writing by Company and Employee, for successive one-year periods ("Renewal Term"), provided neither party provides the other with notice of termination at least thirty (30) days prior to the end of the Initial Term or any Renewal Term, or in accordance with the remaining terms of this Agreement.

**6.      Termination**. The Company may terminate Employee's employment for any reason and at any time *with or without cause*, effective immediately upon notice to Employee. "With cause," shall mean if: (i) Employee breaches, material or otherwise, any of the provisions of this Agreement; (ii) Employee commits an act of dishonesty or breach of trust; (iii) Employee acts in a manner that results in or is intended to result directly or indirectly in an unjust gain to or personal enrichment of Employee at the Company's expense or detriment; (iv) Employee is charged or indicted in connection with any crime; (v) Employee becomes mentally or physically disabled, which prevents the Employee from performing the job duties for the Company; or (vi) Employee violates the policies or procedures of the Company, or otherwise fails to adequately perform his/her job duties or responsibilities for the Company.

Employee may terminate Employee's employment with Company upon providing fourteen (14) days written notice to the Company. At Company's discretion, upon receipt of proper written notice of termination by Employee, Company may elect to retain Employee for the entire fourteen (14) day period following the notice ("Termination Period") or terminate the employment relationship prior to the end of the Termination Period. In the event Company terminates Employee under this section and it elects not to retain Employee during the Termination Period, Employee shall only be entitled to all due and owing compensation through the date Company terminates Employee. Upon termination, all rights to any future compensation, bonuses, commissions, or benefits shall immediately cease as of the date of termination. Employee will be paid all salary and commissions for services provided up until the date of termination of this Agreement, on a prorated basis if necessary. Employee will be paid any unused paid time off (PTO) which Employee has accrued during the calendar year of



Initials

termination however, if Employee's termination occurs during the 90-day probationary period, Employee would not be eligible to receive payment for any unused PTO accrued during the 90-day probationary period. Employee is not entitled to commissions for payments received by the Company after termination of this Agreement or during any unapproved time off.

Notwithstanding the foregoing, Company may terminate Employee's employment at any time with or without cause and without notice within the first ninety (90) days of Employee's employment ("Probationary Period").

**7.** **Notice.** All notices, demands, or other communications given hereunder shall be in writing and shall be deemed to have been duly given by email, or United States certified mail, return receipt requested, by delivery to the following:

**To Company:** CareStaff Partners, LLC
Attn.: Michael Romano
7777 Davie Road Ext., Ste 202A
Hollywood, Florida 33024

**To Employee:** Ryan J. Banker
1706 Sandalwood Drive
Atlanta, GA 30350

**8.** **Compensation and Benefits**.

**a.** Salary. As further compensation for his/her services, Employee shall receive from Company a weekly salary of $865.38 minus applicable taxes and deductions, to be paid through Company's payroll company, in weekly installments, during the term of this Agreement.

**b.** Commissions. Employee may be entitled to commissions from the Company, at the Company's sole discretion. The Commission structure will be determined by the Company. The terms and conditions of the commissions in this section may be altered at any time by Company at Company's sole discretion, and Employee shall be notified in accordance with any applicable federal or state laws.

**c.** Paid Time Off (PTO). Employee shall earn PTO on a weekly accrual basis beginning on the Effective Date. During the first Term of this Agreement, Employee shall accrue a total of 1.54 hours of PTO per each week employed by the Company (10 days total). During the first Renewal Term of this Agreement, Employee shall accrue a total of 1.7 hours of PTO per each week employed by the Company (11 days total). During the Second Renewal Term of this Agreement, Employee shall accrue a total of 1.85 hours of PTO per each week employed by the Company (12 days total). During the fourth Renewal Term, Employee shall accrue a total of 2.00 hours of PTO per each week employed by the Company (13 days total). During the fifth Renewal Term, Employee shall accrue a total of 2.15 hours of PTO per each week employed by the Company (14 days total). During the sixth Renewal Term, Employee shall accrue a total of 2.31 hours of PTO per each week employed by the Company (15 days total) and any subsequent Renewal Term of this Agreement, Employee shall accrue a total of 2.31 hours of PTO per each week employed by the Company (15 days total). Employee may not accrue more than three (3) weeks of PTO during any calendar year. The Employee shall not take more than five (5) consecutive vacation days without



Initials

written approval from Company.  No PTO days may be used during the 90-day Probationary Period.  If Employee's employment with Company terminates during the 90-day Probationary Period, Employee is not entitled to receive a pay-out of any accrued PTO. No Employee may carry a balance of more than 120 hours (3 weeks) of PTO at any time. If Employee's PTO balance accrues beyond 120 hours (3 weeks), Employee forfeits all hours accrued over the 120-hour maximum accrual limit. PTO may be taken and deducted in 2-hour increments. Employee is not required to work on the following paid holidays: New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, day after Thanksgiving, and Christmas Day, unless otherwise instructed by the Employer, or as required by his/her job duties.

**d.** Benefits. Company shall provide Employee with the following benefits, subject to the plans and polices in place at such time Employee is eligible for such benefits: health insurance, vision insurance, dental insurance, and voluntary supplemental insurance options such as term life, AD&D, and short-term-disability. Employee shall become eligible for such benefits in accordance with plan policies and guidelines. The terms and conditions of the benefits in this section may be altered at any time by Company at Company's sole discretion, and Employee shall be notified in accordance with any applicable federal or state laws.

**e.** Expenses. Employee shall be responsible for any cost or expense related to his/her workspace, including but not limited to rent, property insurance, utilities, cable, internet, repairs, and/or improvements. Company shall reimburse Employee for travel related expenses and other business-related expenses in accordance with the Company's existing expense reimbursement policy.

**9.** **Confidentiality and Non-Disclosure**. At all times, any and all "Confidential Information," as defined herein, including any knowledge concerning or belonging to the Company obtained by Employee from Company, will be held in strict confidence by Employee, and Employee will conceal the same from any and all other persons or entities, including, but not limited to, competitors of the Company, and Employee shall not impart any such Confidential Information or knowledge acquired by him to any anyone without first obtaining prior written consent from the Company.

**a.** "Confidential Information" Defined. "Confidential Information" means all trade secrets, confidential, proprietary or business-sensitive information, whether oral, written, recorded, graphic, machine-readable or tangible form, and whether or not registered, and including all notes, plans, records, reports, documents, computer programs and software and other evidence thereof, including without limitation all: business plans, business models, business practices, methods, know-hows, knowledge, strategies, patents, patent applications, copyrights, trademarks, trade names, service marks, employee lists, commercial and in-house databases, candidate lists, applicant lists and information, existing or prospective client and/or customer lists, client preferences, client contacts, contracts, assignment lists, employment agreements, pricing and discount plans, policies and practices, job orders, vendor lists, patient lists, operational methods, marketing plans or strategies, forms, procurement and sales activities or methods, promotion and pricing techniques, credit and financial data, inventions, processes, billing processes, procedures, disputes, and other information, data and documents now existing or to be created by Company, regardless of whether any of such information, data or documents qualify as a "trade secret" under applicable federal or state law.  If Employee is ordered by a court of competent jurisdiction to disclose Confidential Information, Employee shall provide to Company: (1) prompt written notice, no more than five (5) days from its receipt of any request for disclosure so that



Initials

Company may seek, at its sole cost and expense, a protective order or other remedy prior to such disclosure; and (2) reasonable cooperation and assistance, at Company's sole cost and expense, in opposing such disclosure or seeking a protective order or other limitations on disclosure, prior to such disclosure.

**b.** Third Party Confidential Information Received by Company. Employee recognizes that Company has received and will receive confidential or proprietary information from third parties, including but not limited to clients, candidates, applicants, vendors, and care providers. Employee agrees to hold all such information in the strictest confidence and will not use the information or disclose it to anyone, except as strictly necessary in connection with, and as contemplated by the ordinary course of, the performance of Employee's job responsibilities, and to the extent consistent with Company's agreement with such third party.

**c.** Return of Confidential Information and Company Property. Employee shall be provided a Polycom phone, one (1) Dell Optiplex computer, two (2) twenty-four-inch monitors, one (1) keyboard, and one (1) mouse in order to perform his/her job duties Employee shall take all steps necessary to protect Company property from damage, theft or misuse. Company shall replace any Company property in the event of damage or theft that is not the fault of Employee. Employee acknowledges and agrees that all Confidential Information and other Company property, such as notes, records, reports, sketches, plans, laptops, computers, monitors, cell phones, unpublished memoranda or other documents, whether in paper, electronic or other form (and all copies thereof), held by Employee concerning any information relating to the business of Company, whether confidential or not, are the property of Company. Employee will deliver to Company within forty-eight (48) hours of termination or expiration of her employment with Company or at any other time Company may request, all equipment, files, property, memoranda, notes, plans, records, reports, computer tapes, printouts, laptops, computers, Polycom phones, monitors, software and other documents and data (and all electronic, paper or other copies thereof) belonging to Company which includes, but is not limited to, any materials that contain, embody or relate to the Confidential Information, Work Product or the business of Company, which she may then possess or have under her control.

**10. Innovations and Intellectual Property.**

**a.** Ownership and Assignment. Employee acknowledges and agrees that all inventions, technology, processes, innovations, ideas, improvements, developments, methods, designs, analyses, trademarks, service marks, and other indicia of origin, writings, audiovisual works, concepts, drawings, reports and all similar, related, or derivative information or works (whether or not patentable or subject to copyright), including, but not limited to all, patents, copyrights, copyright registrations, trademarks, and trademark registrations in and to any of the foregoing, along with the right to practice, employ, exploit, use, develop, reproduce, copy, distribute copies, publish, license, or create works derivative of any of the foregoing, and the right to choose not to do or permit any of the aforementioned actions, which relate to Company's actual or anticipated business, research and development or existing or future products or services and which are conceived, developed or made by Employee while employed by Company (collectively, the "Work Product") belong to Company. All Work Product created by Employee while employed by Company will be considered "work made for hire," and as such, Company is the sole owner of all rights, title, and interests therein. All other rights to any new Work Product and all rights to any existing Work Product, including,



Initials

but not limited to, all of Employee's rights to any copyrights or copyright registrations related thereto, are conveyed, assigned and transferred to Company pursuant to this Agreement. To the extent allowed by law, this assignment of Work Product includes all rights of paternity, integrity, disclosure and withdrawal and any other rights that may be known as or referred to as "moral rights," "artist's rights," or the like. To the extent Employee retains any such moral rights under applicable law, Employee hereby ratifies and consents to any action that may be taken with respect to such moral rights by or authorized by Company (or its designee) and agrees not to assert any moral rights with respect thereto. Employee will confirm any such ratifications, consents, and agreements from time to time as requested by Company (or its designee).

**b.** <u>License for Other Work Product.</u>  Employee agrees not to incorporate into any Work Product any work or invention owned by Employee or in which Employee has an interest without obtaining Company's prior written consent. If, after receiving such consent, in the course of Employee's employment with Company, Employee incorporates into Work Product a work or invention that Employee owns or in which Employee has an interest, Employee hereby grants to Company a worldwide, nonexclusive, royalty-free, irrevocable, perpetual, transferable and sublicensable (through multiple tiers) license to make, use, import, offer for sale, sell, copy, distribute, publicly display, perform publicly and by means of a digital audio transmission such work or invention as part of and in connection with Company property or Work Product.

**11.**     **Non-Solicitation.** Employee, during his/her employment with Company, and for a period of twelve (12) months following the termination of his/her employment with Company for any reason, shall not in any manner, directly or indirectly, either on his/her own account or with or for anyone else, (a) seek or accept any position, affiliation, ownership, partnership, joint venture, independent contractor, consulting, or employment position, or be connected in any manner or any capacity, with any individuals, companies, clients, prospective clients, candidates, prospective candidates, or their representatives involved in doing business with Company, or any companies associated with Company or its representatives or agents; (b) contact, do business with, solicit, or attempt to solicit any of Company's new, existing or prospective customers, clients, candidates, or vendors, for the purpose of providing any business or service that is similar to Company's business; (c) do business with, solicit, or attempt to solicit for any business endeavor or hire or attempt to hire any employee, representative, recruiter, agent, contractor, candidate, or consultant of Company; or (d) otherwise divert or attempt to divert from Company any business whatsoever or interfere with any business or contractual relationship between Company and any other individual or entity.

**12.**     **Non-Competition.** Employee, during his/her employment with Company, and for a period of twelve (12) months following the termination of his/her employment with the Company for any reason, shall not in any manner, directly or indirectly, engage in any business or activity which competes with the business in which the Company is engaged at the time of such termination, and will not directly or indirectly own, manage, operate, join, control or participate in the ownership, management, operation or control of, or be employed by, or connected in any manner or any capacity, with any corporation, business or individual that is so engaged in any competitive business. This non-competition agreement applies to the geographic area including a one hundred (100) mile radius from any principal place(s) where Employee performed work in the twelve (12) months preceding termination of this Agreement.

**13.**     **Non-Disparagement.** Employee and Company hereby agree that during the period while Employee performs services for Company and at all times thereafter, Employee and Company will not make any statement that is disparaging about Employee or Company, any of their respective officers, directors, members or employees including, but not limited to, any statement that disparages the products, services, finances, financial condition, capabilities or other aspect of the business of Company or the Employee. Employee and Company further agree that during the same period Employee and Company will not engage in any conduct that is intended to inflict harm

upon the professional or personal reputation of Employee or Company, or any of their respective officers, directors, shareholders or employees.

14.      **Remedies**. Employee recognizes that Company has legitimate business interests to protect and as a consequence, Employee agrees to the reasonable restrictions contained in this Agreement because they further Company's legitimate business interests. Employee acknowledges and agrees that damages in the event of a breach or threatened breach of the covenants contained in this Agreement will be difficult to determine and Company will not have an adequate remedy at law, and therefore Employee agrees that Company, in addition to seeking actual or other damages, may seek specific enforcement of the covenants set forth in this Agreement in any court of competent jurisdiction, including, without limitation, by the issuance of an immediate temporary or permanent injunction, without notice and without the necessity of a bond. Employee and Company agree that the covenants in this Agreement are reasonable, including, without limitation, in the period of time, scope, and geographical area. However, should any court determine that any provision herein is unreasonable, either in period of time, scope, or geographical area, or otherwise, the Parties agree that the covenants should be interpreted and enforced to the maximum extent which such court deems reasonable under applicable law. In the event of a breach by Employee of any covenant set forth in Sections 9-13, the term of such covenant will be extended by the period of the duration of such breach.

15.      **Survival of Restrictive Covenants.** The provisions set forth in Sections 9-13 above shall survive the termination of this Agreement and shall survive the termination or expiration of Employee's employment with Company for any reason.

16.      **Restrictive Covenants Independent.** Each restrictive covenant set forth in this Agreement shall be construed as a covenant independent of any other covenant or provision of this Agreement between Company and Employee, and the existence of any claim or cause of action by Employee against Company, whether predicated upon another covenant or provision of the Agreement or otherwise, shall not constitute a defense to the enforcement by Company of any other covenant or this Agreement.

17.      **Insurance.** Employee shall, at  Employee's expense, obtain and keep in force during the term of this Agreement a policy of liability insurance insuring Employee against any liability arising out of the ownership, use, occupancy or maintenance of the Employee's remote place of work, and all areas appurtenant thereto. Such insurance shall be in the amount of not less than Five Hundred Thousand ($500,000.00) Dollars for injury or death of one person in any one accident or occurrence and in the amount of not less than One Million ($1,000,000.00) Dollars for injury or death of more than one person in any one accident or occurrence. Such insurance shall further insure Employee against liability for property damage of at least Ten Thousand ($10,000.00) Dollars. The limit of any such insurance shall not, however, limit the liability of the Employee hereunder. Company shall be listed as an additional insured on such insurance policy.

18.      **Indemnification.** EMPLOYEE SHALL INDEMNIFY AND HOLD HARMLESS COMPANY, ITS DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS, AGENTS, SUCCESSORS AND ASSIGNS, FROM ANY AND ALL LIABILITY, DAMAGES, OR EXPENSES INCURRED OR CLAIMED, INCLUDING ATTORNEY'S FEES, COSTS AND EXPERT WITNESS FEES AT THE TRIAL COURT AND APPELLATE LEVEL, ARISING DIRECTLY OR INDIRECTLY FROM ANY NEGLIGENT ACT OR OMISSION OF EMPLOYEE, INCLUDING ALL CLAIMS RELATING TO THE INJURY OR DEATH OF ANY PERSON OR DAMAGE TO  ANY  PROPERTY, OR FROM ANY OCCURRENCE AT, OR IN CONNECTION OF, EMPLOYEE'S RESIDENCE OR OTHER LOCATION AT WHICH EMPLOYEE MAY CHOOSE TO CONDUCT HIS/HER ACTIVITIES PERFORMANCE OF THIS AGREEMENT, OR IN CONNECTION WITH EMPLOYEE'S FULFILMENT OF HIS/HER OBLIGATIONS RELATED TO THE PERFORMANCE OF THIS AGREEMENT, OR IN CONNECTION WITH EMPLOYEE'S FULFILMENT OF HER OBLIGATIONS UNDER THIS AGREEMENT.

19.      **Representations.** Employee represents and warrants that Employee does not possess any property, confidential information or trade secrets of any competitor of the Company or any other individual or



Initials

entity, and, to the extent any such information exists, Employee warrants that he will not in any way utilize any such property, confidential information or trade secrets belonging to any other individual or entity in the course of providing services for the Company. Employee further acknowledges and understands that no warranties of any kind are given by the Company with respect to the accuracy or completeness of the Confidential Information, Company Property, Work Product, and any other information provided to Employee.

**20.** **Legal Advice and Interpretation.** The Parties acknowledge that they have received, or have had a reasonable opportunity to receive, independent legal advice as to the nature and obligations of this Agreement and each has been fully informed of their respective legal rights, obligations and liabilities as set forth herein. The Parties hereto have entered into this Agreement freely and voluntarily and of their own free will and accord without any threat of force or duress in any form or nature whatsoever. As such, this Agreement shall be construed as if the Parties jointly prepared it and any uncertainty or ambiguity shall not be interpreted against any one party because of the manner in which this Agreement was drafted or prepared.

**21.** **Confidentiality of Agreement.** The Parties to this Agreement agree that they will hereafter maintain the confidentiality of this Agreement and all of the terms thereof and will not disclose same hereafter to any third party without the other party's prior written approval. However, Employee hereby authorizes Company to notify others, including, but not limited to, its clients or vendors or any of Employee's future employers, of the terms of this Agreement and Employee's responsibilities under this Agreement. It shall not be considered a breach of this Agreement for Employee to make disclosure to Employee's future employers and immediate family or in order to obtain private and confidential legal, tax, or financial advice or to respond to any inquiry from any governmental agency regarding a tax filing, or as otherwise required by law.

**22.** **Survival of Agreement**. The provisions of this Agreement shall be binding upon and inure to and for the benefit of any successor of the Company, business organization or entity surviving or resulting from the transfer, sale, and/or conveyance of the Company's assets and/or equity interests.

**23.** **Subsidiaries and Affiliates**. Employee understands and agrees that Company executes this Agreement on its own behalf and on behalf of each of its subsidiaries and affiliates, if any, including the particular entity by whom Employee is employed, and that Employee's obligations under this Agreement shall apply equally to each of Company's subsidiaries and affiliates, now or existing at a later point in time. In the event that Employee is transferred, assigned or otherwise becomes employed by any other of Company's subsidiaries and affiliates, Employee's obligations under this Agreement shall continue to apply equally to each of such subsidiary or affiliate and to Company and the other subsidiaries and affiliates of Company and all such parties may enforce this Agreement in its own name as if it were a party to this Agreement.

**24.** **Entire Agreement**. This Agreement together with any Addendum to this Agreement embodies and represents the entire agreement between the Company and Employee regarding Employee's employment with the Company, and there are no other oral or written agreements, or any representations made by either party relative to the employment relationship that are not expressly set forth in the Agreement or any Addendum hereto.

**25.** **Miscellaneous.** Neither this Agreement nor any right or interest hereunder shall be assignable by Employee or his/her successors, legal representatives or assigns, because the rights and benefits of Employee under this Agreement are personal to Employee, and are not subject to voluntary or involuntary alienation, assignment or transfer by him. This Agreement shall be governed by and construed in accordance with the laws of the State of Florida without regard to its conflicts of law rules and principles. This Agreement may only be modified or amended by an instrument in writing signed by both Parties hereto. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. In case any provision in this Agreement shall be held invalid, illegal, or unenforceable, the validity, legality and enforceability of the remaining provisions hereof will not in any way be affected or impaired thereby. The Parties to this Agreement shall, in such an event, replace the void, illegal, or unenforceable provision with a valid, legal, and enforceable provision that corresponds as far as possible to the spirit and purpose of the void, illegal, and

RB                                                MR
Initials

unenforceable provision. In the event of legal enforcement of any term of this Agreement, the prevailing party will be awarded its pre-suit, suit, and appellate attorneys' fees and costs associated with such enforcement. The exclusive jurisdiction and venue for any dispute arising from this Agreement shall be the state and federal courts located in Broward County, Florida. This Agreement supersedes any and all agreements or offers, either oral or written, between the Parties hereto, and any prior agreements shall be considered null and void.

26. **WAIVER OF JURY TRIAL. EACH OF THE PARTIES KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHTS IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH, THIS AGREEMENT, OR ANY COURSE OF CONDUCT, COURSE OF DEALING OR STATEMENTS (WHETHER VERBAL OR WRITTEN) RELATING TO THE FOREGOING. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE PARTIES TO ENTER INTO THIS AGREEMENT.**

**IN WITNESS WHEREOF**, Company and Employee have duly executed and delivered this Agreement as of the day and year first above written.

**EMPLOYEE:**

*I HEREBY ACKNOWLEDGE THAT I HAVE READ THIS AGREEMENT CAREFULLY AND UNDERSTAND THE LEGAL EFFECT OF ITS TERMS. I HAVE HAD THE OPPORTUNITY TO CONSULT WITH INDEPENDENT LEGAL COUNSEL AND I AM ENTERING INTO THIS AGREEMENT FREELY BASED ON MY OWN JUDGMENT.*

By: _Ryan Banker (Oct 5, 2020 15:45 EDT)_       Date: _Oct 5, 2020_

**RYAN J. BANKER**

By: _Mike Romano (Oct 5, 2020 15:49 EDT)_       Date: _Oct 5, 2020_

**MICHAEL ROMANO, CEO**

___/___
Initials

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT, IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.:

CARESTAFF PARTNERS, LLC, a Delaware
limited liability company,

       Plaintiff,

v.

FOCUS STAFF, LLC, a Texas limited liability
company & RYAN BANKER, individually,

       Defendants.

_____/

## SUMMONS

THE STATE OF FLORIDA
To Each Sheriff/Certified Process Server of the State:

       YOU ARE COMMANDED to serve this summons and a copy of the Complaint in this
action on Defendant by serving:

**RYAN BANKER**
1706 Sandalwood Drive
Atlanta, GA 30350

       Each Defendant is required to serve written defenses to the verified complaint or petition
on: ROBERT C. STREIT, ESQ. of SKS LEGAL GROUP, P.A., 101 3rd Avenue, Suite 1500, Fort
Lauderdale, FL 33301, within twenty (20) days after service of this summons on that Defendant,
exclusive of the date of service, and to file the original of the defenses with the Clerk of this Court
either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do
so, a default will be entered against that Defendant for the relief demanded in the complaint or
petition.

Dated this ____ day of _____JUN 21 2021_____.

**CLERK OF THE COURT**

By: _____
      As Deputy Clerk

**BRENDA D. FORMAN**

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT, IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.:

CARESTAFF PARTNERS, LLC, a Delaware
limited liability company,

      Plaintiff,

v.

FOCUS STAFF, LLC, a Texas limited liability
company & RYAN BANKER, individually,

      Defendants.

_____/

## SUMMONS

THE STATE OF FLORIDA
To Each Sheriff/Certified Process Server of the State:

      YOU ARE COMMANDED to serve this summons and a copy of the Complaint in this
action on Defendant by serving:

**FOCUS STAFF, LLC**
c/o Kyle Rhodes, Registered Agent
8848 Greenville Avenue
Dallas, Texas 75243

      Each Defendant is required to serve written defenses to the verified complaint or petition
on: ROBERT C. STREIT, ESQ. of SKS LEGAL GROUP, P.A., 101 3rd Avenue, Suite 1500, Fort
Lauderdale, FL 33301, within <u>twenty (20) days</u> after service of this summons on that Defendant,
exclusive of the date of service, and to file the original of the defenses with the Clerk of this Court
either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do
so, a default will be entered against that Defendant for the relief demanded in the complaint or
petition.

Dated this ____ day of _____JUN 21 2021____.

**CLERK OF THE COURT**

By: _____
        As Deputy Clerk

**BRENDA D. FORMAN**

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT, IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.: CACE-21-012012

CARESTAFF PARTNERS, LLC, a Delaware
limited liability company,

      Plaintiff,

v.

FOCUS STAFF, LLC, a Texas limited liability
company & RYAN BANKER, individually,

      Defendants.

_____/

## WAIVER OF SERVICE OF PROCESS

**TO:**    Robert C. Streit, Esq.
      SKS LEGAL GROUP, LLC
      101 NE Third Avenue, Suite 1500
      Fort Lauderdale, FL 33301
      rstreit@streitlawgroup.com

      I, Patrick Martin, Esq., counsel for Defendant, FOCUS STAFF, LLC, acknowledge receipt

of your request that I waive service of summons in this action on behalf of Defendant, FOCUS

STAFF, LLC. This acceptance is expressly conditioned upon the stipulation that the acceptance

shall not act as a waiver of any claim or defense inuring to Defendant, FOCUS STAFF, LLC.  I

have also received a copy of the Complaint in the action, two copies of this instrument, and a

means by which I can return this signed waiver to you without cost to me.

      I agree to save the cost of service of a summons and an additional copy of the complaint in

this lawsuit by not requiring that Defendant, FOCUS STAFF, LLC be served with judicial process

in the manner provided by Rule 1.070, Florida Rules of Civil Procedure.

      Defendant, FOCUS STAFF, LLC will retain all defenses or objections to this lawsuit or to

*CareStaff Partners, LLC v. Focus Staff, LLC et al.*
Case No.:  CACE-21-012012
Waiver of Service of Process

the jurisdiction or venue of the court except for objections based on a defect in the summons or in

the service of the summons.

Pursuant to Fla. R. Civ. P. 1.070(i)(4), Defendant, FOCUS STAFF, LLC will have sixty

(60) days from June 23, 2021, to file a response to Plaintiff's Complaint in this action, and service

of process will have been deemed effected on August 2, 2021.

Dated: June 23, 2021.

Respectfully submitted,

**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**
9130 S. Dadeland Boulevard, Suite 1625
Miami, Florida 33156
Telephone:  305.374.0506
Facsimile:  305.374.0456

*/s/ Patrick F. Martin*
Patrick F. Martin
Florida Bar No. 998729
pfmartin@ogletree.com

*Attorney for Defendant, Focus Staff, LLC*

47601097.1

2

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT, IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.: CACE-21-012012

CARESTAFF PARTNERS, LLC, a Delaware
limited liability company,

      Plaintiff,

v.

FOCUS STAFF, LLC, a Texas limited liability
company & RYAN BANKER, individually,

      Defendants.

_____/

## <u>NOTICE OF APPEARANCE AND DESIGNATION OF EMAIL ADDRESSES</u>

NOTICE IS HEREBY GIVEN that Patrick F. Martin, Esq. of the law firm of Ogletree,

Deakins, Nash, Smoak & Stewart, P.C. hereby enters this Notice of Appearance as counsel for

Defendant Focus Staff, LLC, and designates, pursuant to Rule 2.516 of the Florida Rules of

Judicial Administration, the following email addresses for the purpose of service of all

documents required to be served pursuant to Rule 2.516 in this proceeding:

Primary email address:        Pfmartin@ogletree.com

Secondary email addresses:    Kelly.nino@ogletree.com

                            Robert.borroto@ogletree.com

                            Veronica.alarcon@ogletree.com

Dated: June 24, 2021.

Respectfully submitted,

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
9130 S. Dadeland Boulevard, Suite 1625
Miami, Florida 33156
Telephone:  305.374.0506
Facsimile:   305.374.0456


*/s/ Patrick F. Martin*
Patrick F. Martin
Florida Bar No. 998729
Pfmartin@ogletree.com

*Counsel for Defendant, Focus Staff, LLC.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on June 24, 2021, the foregoing document is being served on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified.

<u>*s/ Patrick F. Martin*</u>
Patrick F. Martin

## SERVICE LIST

*Carestaff Partners, LLC  v.Focus Staff LLC, & Ryan Banker.,*
*CASE NO. CACE -21-012012*
*17th Judicial Circuit in and for Broward County, Florida*

Robert C. Streit, Esq.
rstreit@skslegalgroup.com
SKS Legal Group, P.A.
101 N.E Third Avenue, Suite 1500
Fort Lauderdale, Florida 33301
Telephone: (954) 637-3713

*Counsel for Plaintiff, Carestaff Partners, LLC.*

Method of Service: Florida E-Filing Portal

Patrick F. Martin
Pfmartin@ogletree.com
OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.
9130 S. Dadeland Boulevard, Suite 1625
Miami, Florida 33156
Telephone:  305.374.0506
Facsimile:   305.374.0456

*Counsel for Defendant, Focus Staff, LLC.*

47607141.1